UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THOMAS MADISON,                           :
    PLAINTIFF,                            :
                                          :  CIVIL ACTION NO. 3:10cv1912 (VLB)
                                          :  JANUARY 11, 2012
    v.                                    :
                                          :
RIGHTWAY PARTNERS, LLC                    :
A Texas limited liability company,        :
PATRICK MCMULLAN, individually            :
EDWARD O'DONNEL, individually             :
ROSENBERG & ASSOCIATES                    :
A Connecticut limited liability           :
company, And,                             :
DAVID E. ROSENBERG, individually          :
    DEFENDANTS                            :

### MEMORANDUM OF DECISION DENYING THE ROSENBERG DEFENDANTS' [DKT. # 23] MOTION TO DISMISS

      The Plaintiff, Thomas Madison, brings this action against Defendants, Rightway Partners, LLC ("Rightway") and Rosenberg & Associates, LLC ("Rosenberg & Assoc."), and against individual Defendants Patrick McMullan, Edward O'Donnell and David Rosenberg. [Dkt. #1, Compl. General Allegations ¶¶ 1–6]. McMullan and O'Donnell are partners in Rightway, and Rosenberg is an attorney and a member of Rosenberg & Assoc. [*Id.* at ¶¶ 3-4, 6]. Only Rosenberg & Assoc. and David Rosenberg (collectively referred to as the "Rosenberg Defendants") have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's Count II claim for breach of fiduciary duty and Count IV claim for conversion on the basis that Plaintiff has failed to state a plausible claim.

### Factual Allegations and Procedural Background

The following facts are taken from Plaintiff's complaint. Plaintiff alleges that Defendants approached the Plaintiff with a multi-step investment opportunity. [Dkt. #1, Compl. at ¶ 10]. First, Rightway, the Plaintiff and two other individuals would each deposit funds totaling $575,000 into several escrow accounts. [*Id.*]. Plaintiff was to deposit $100,000 into his escrow account. The funds in the escrow accounts were to be used as "an origination fee to secure the issuance of a $100 million loan … from one or more banks pursuant to a bank instrument known as a certificate of deposit ("CD")." [*Id.* at ¶ 10]. "After the funds needed for the origination fee had been secured, a Nevada company named Accelerated Commercial Consultants ("Accelerated") and its two principals, Frank Albright and Terry Prichett, would actually secure the $100 million loan from one or more banks." [*Id.*]. The Defendants informed the Plaintiff that in return for his investment, he would receive the $100,000 he deposited into the escrow account plus an additional $100,000 within days. [*Id.*].

As alleged in the Complaint, the Plaintiff entered into an escrow agreement ("Escrow Agreement") dated March 20, 2010 with Defendants in which the Rosenberg Defendants were designated as "Escrowee." Under the terms of the Escrow Agreement, Plaintiff's $100,000 deposit was to be disbursed to "Sharon Silver, Esq. as legal counsel for provider of the Bank instrument" upon (i) the Lender providing "the Escrowee, Borrower, and Deposit Lender with evidence that the Bank Instrument has been created (i.e. a CUSIP, ISIN or other marker) in accordance with the terms and conditions specified by the Borrower and that the

Bank Instrument will be received upon payment of the Escrow Deposit"; (ii) the Lender providing "the Escrowee, Borrower, and Deposit Lender that their funding partner Accelerated Commercial Consultants is ready, willing and able to monetize the Bank Instrument and secure funding;" and (iii) that the "Escrowee shall receive from Deposit Lender written authorization to release the Escrow Deposit to Sharon Silver, Esq." [Dkt. #1, Ex. A, Escrow Agreement at Section 1(A)]. A CUSIP and an ISN are markers assigned to identify specific securities.

Although not clearly alleged in the Complaint, it appears that all the funds deposited by the Plaintiff and the other investors were to be used to purchase a bank instrument specifically a certificate of deposit, also known as a "CD" only after evidence that the CD had been created was provided. After the funds in the escrow accounts had been transferred into the CD, the CD would then be transferred to the lender making the $100 million loan as an origination fee. Upon the simultaneous funding of the loan, the Plaintiff would receive his original investment together with the promised returned thereon. It is unclear from the allegations in the complaint, whether the CD was supposed to be held in escrow until it was used to pay the loan origination fee when the loan closed and the loan proceeds were disbursed.

Plaintiff alleges that Rosenberg, McMullan and O'Donnell represented to the Plaintiff that the investment opportunity was safe, and that they had successfully used this same process before. [Dkt. #1, Compl. at ¶ 14]. The Defendants also assured the Plaintiff that Rightway would not contribute its own funds if it were not sure about the investment. [*Id.* at ¶ 13]. Plaintiff alleges that

"although the investment arrangement was extremely complicated, Rosenberg, McMullan and O'Donnell represented to Plaintiff that this arrangement was safe and secure and a proven financial process which they had successfully utilized in the past and that Plaintiff's investment would be doubled within a matter of days." [*Id*. at ¶ 14]. Plaintiff alleges that he "relied upon these representations." [*Id*.].

Plaintiff alleges further that despite its repeated representations that it was placing $275,000 of its own money into the transaction as part of the origination fee, Defendant Rightway never paid any part of the origination fee. [*Id*. at ¶ 15]. Plaintiff asserts that these representations made by McMullan and O'Donnell were false and made with the intent to induce Plaintiff to contribute his own funds. [*Id*. at ¶ 18].

Accelerated and its two principals were sued in a Nevada Federal District Court by an investor who claimed that they had fraudulently induced her to invest $450,000 and then proceeded to use her money for their personal use. [*Id.* at ¶ 16]. Plaintiff asserts that Defendants knew that Accelerated and its two principals had been sued for fraud by an investor and that they failed to disclose this information to Plaintiff. [*Id.* at ¶¶ 16–17].

Relying on the Defendants' representations, Plaintiff contributed $100,000 into the escrow account. [*Id.* at ¶ 14]. Plaintiff alleges that the Rosenberg Defendants then represented to Plaintiff that "they had evidence that the CD was issued when in fact they had no such evidence." [*Id.* at ¶ 19]. Plaintiff further alleges that the Rosenberg Defendants contrary to the terms of the escrow

agreement and contrary to Plaintiff's instructions released Plaintiff's $100,000 out of the escrow account on or about March 26, 2010.  [*Id.* at ¶ 20].

Rosenberg, McMullan and O'Donnell told the Plaintiff on multiple occasions after the escrow funds had been released that "the CD had been procured but that they were only waiting on receipt of the identifying number." Despite Plaintiff's repeated requests for information pertaining to the procurement and validation of the CD, Plaintiff alleges no evidence was ever provided to him of the issuance of the CD. [*Id.* at ¶¶ 21–23].  Plaintiff has also not received his $100,000 despite his repeated demands.  [*Id.* at ¶ 23].

The Plaintiff filed his five count complaint in federal district court on December 6, 2010, alleging breach of contract (Count I), breach of fiduciary duty (Count II), negligent misrepresentation (Count III), conversion (Count IV), and fraud (Count V).  The Rosenberg Defendants moved to dismiss the breach of fiduciary duty and conversion claims, Counts II and IV respectively, on the grounds that the Plaintiff has failed to state legal claims on which relief may be granted.

In Count II, the Plaintiff alleges that under the "Escrow Agreement," the Rosenberg Defendants had a fiduciary duty to Plaintiff. [Dkt. #1, Compl. Count II, ¶ 32].  This duty included, but was not limited to, the duty to follow the terms of the agreement, and to disclose any relevant and material facts that the Rosenberg Defendants knew or should have known.  [*Id.*].  The Plaintiff alleges that the Rosenberg Defendants breached their duty by failing to disclose material facts to the Plaintiff, by failing to exercise reasonable care and diligence to correct

misrepresentations they knew or should have known were false, and by releasing the Plaintiff's investment funds before they were authorized to do so. [*Id.* at ¶ 34].

In Count IV, the Plaintiff maintains that the Defendants wrongfully exercised ownership over the Plaintiff's property, without authorization to do so, and to the exclusion of the Plaintiff's rights. [Dkt. #1, Compl. Count IV, ¶ 43]. The Plaintiff alleges that the Defendants exercised dominion and control over the Plaintiff's funds deposited into escrow, and therefore deprived the Plaintiff of his property rights in the funds. [*Id.* at ¶ 44].

### Legal Standard

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (internal quotations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the

complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

### Analysis of Breach of Fiduciary Duty Claim

The Plaintiff alleges that the Rosenberg Defendants as escrow agent owed the Plaintiff a fiduciary duty. [Dkt. #1, Compl. Count II ¶ 32].  He alleges that this fiduciary duty included the obligation to "affirmatively disclose any relevant and material facts and information which they knew, or by the exercise of reasonable care and diligence should have known, relating to the business proposition, and the duty to release the Plaintiff's $100,000 only in accordance with the terms of the Escrow Agreement and Plaintiff's approval." [*Id.*].  According to the Plaintiff, the Rosenberg Defendants breached this duty when they failed to disclose such relevant and material facts, when they made material misrepresentations to the Plaintiff, when they failed to correct misrepresentations they knew or should have known were false, and when they released Plaintiff's funds contrary to the terms of the Escrow Agreement. [*Id.* at ¶ 34].

The Rosenberg Defendants concede that Attorney Rosenberg "owed plaintiff a duty to perform under the terms of the Escrow Agreement," but deny that he owed plaintiff a fiduciary duty beyond strict compliance with the terms of the Escrow Agreement.  [Dkt. #23-1, Mem. of Law in Supp. Of Def.'s Mot. To Dismiss 5–6].  Accordingly, the Rosenberg Defendants acknowledge they had a duty to comply with the terms of the Escrow Agreement, but contend that he had no duty beyond compliance with the Escrow Agreement.

Under Connecticut law, an escrow agent is a person who "is held to strict compliance with the terms of the escrow agreement; and [who] may not perform any acts with reference to handling the deposit, or its disposal, which are not authorized by the contract of deposit."  *Norwich Lumber Co. v. Yatroussis*, 5 Conn.Cir.Ct. 95, 101 (Cir. Ct. Conn. 1967) (quoting 28 Am.Jur.2d 24, Escrow).  Therefore, an escrow agent is a neutral third-party who is authorized only to abide by the terms of the agreement, and who has no discretion or further involvement in the transaction. *See id.*

A fiduciary or confidential relationship under Connecticut law "is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 38 (2000).  Connecticut courts have "refrained from defining a fiduciary relationship in precise detail," preferring to leave the definition open to account for new situations where imposing fiduciary duties may be warranted. *Id.* at 38.  Therefore, the question of whether a fiduciary duty exists under the

circumstances of a given case is usually a question of fact that cannot be decided on a motion to strike or motion to dismiss. *Govin v. Chaplin Lodge*, No. CV054001136, 2006 WL 1102690 at *4 (Conn. Super. 2006).

Although the parties have mainly focused their memoranda on whether an escrow agent has a fiduciary duty under Connecticut law, the Court construes Plaintiff's Complaint to plausibly allege that the Rosenberg Defendants served both as a financial advisor as well as escrow agent. The allegations in the Complaint illustrate that the Rosenberg Defendants undertook a role beyond that of a neutral third-party escrow agent and instead provided investment advice to Plaintiff in order to induce him to deposit $100,000 with them in escrow. On a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Chambers v. Time Warner, Inc.*, 282 F.ed 147, 152 (2d Cir. 2002). In addition the Second Circuit has instructed that dismissal pursuant to Rule 12(b)(6) is "inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). Since the Court must assume all the factual allegations in the Complaint are true and draw all reasonable inferences in favor of the Plaintiff, the allegations in the Complaint regarding Attorney Rosenberg's role in presenting the "investment opportunity" as "safe" and offering his advice regarding the "opportunity" based on his experience support a reasonable inference that Attorney Rosenberg also assumed the role of a financial advisor; a role that went beyond the neutral role and duties of an escrow agent and was instead characterized by a unique degree

of trust, confidence and superior knowledge that traditionally establish a fiduciary relationship.

Plaintiff's allegations therefore support a reasonable inference that the relationship between the Rosenberg Defendants and Plaintiff was characterized by superior knowledge, expertise, trust and confidence.  Specifically, Plaintiff alleges that the Rosenberg Defendants, together with the other Defendants, approached the Plaintiff with the investment opportunity, and represented to the Plaintiff that "the investment opportunity they were presenting … was a safe investment and such a great investment opportunity that Rightway would be investing $275,000 of its own money which it would not do if McMullan and O'Donnell were not certain of the return." [Dkt. #1, Compl. General Allegations ¶ 13].  Plaintiff alleges that the Rosenberg Defendants represented to him "that this arrangement was safe and secure and a proven financial process which they had successfully utilized in the past and that Plaintiff's investment would be doubled within a matter of days." [*Id.* at ¶ 14]. These facts as alleged, which the Court must assume to be true on a motion to dismiss, suggest that Attorney Rosenberg undertook a role that was similar to a financial advisor and therefore held himself out as an individual with superior knowledge, skill and expertise with respect to this particular type of investment opportunity and transaction.  Further, Plaintiff alleges that he relied on these representations regarding the safe nature of this type of investment to his eventual detriment which supports a plausible inference that the Rosenberg Defendant's representations had created a relationship characterized by a degree of trust and confidence.  [*Id.* at ¶ 14.]

The Connecticut Supreme Court's decision in *Alaimo v. Royer*, 188 Conn. 36 (1982) is particularly instructive to the present case.  In *Alaimo*, the plaintiff sought advice from the defendant regarding the management of her savings, and the defendant, holding himself out as a knowledgeable real estate advisor, represented that he would take care of the plaintiff financially, that he would safeguard the plaintiff's money, and that the plaintiff should place her trust in the defendant.  *Id.* at 37, 41–42.  Relying on these representations, the plaintiff entered a series of monetary transactions with the defendant, and later sued him for fraud.  *Id.* at 37.  The defendant argued that the facts which the trial court charged the jury with were insufficient to support a finding of a fiduciary relationship.  Acknowledging that Connecticut courts leave the definition of a fiduciary relationship open in order to adapt to new circumstances, the Connecticut Supreme Court held that it could not conclude that the record in the case was as a matter of law inadequate to support a finding of a fiduciary relationship.  *Id.* at 41.   Like in *Alaimo*, Plaintiff has alleged that Attorney Rosenberg made representations to the Plaintiff eliciting the Plaintiff's trust and confidence and representing that Attorney Rosenberg did have superior knowledge.  *See* [Dkt. #1, Compl. General Allegations ¶¶ 13–14].  Plaintiff alleges that Attorney Rosenberg assured the Plaintiff that the investment opportunity was a "safe secure investment," and that the other Defendants would not be investing their own funds if the transaction were not a proven success. *See* [*Id.* at ¶ 13].  Therefore, Attorney Rosenberg's alleged conduct was similar to the

defendant's conduct in *Alaimo* which the Connecticut Supreme Court acknowledged could constitute a fiduciary relationship.

Further, federal law imposes fiduciary duties on financial advisors. 15 U.S.C.A. § 80a-35 (a) authorizes the Securities and Exchange Commission to bring an action alleging that a person who is an investment advisor engaged in an act constituting breach of fiduciary duty involving personal misconduct in respect of any registered investment company. The Connecticut Supreme Court's decision in *Alaimo* and 15 U.S.C.A. § 80a-35 (a) suggests that "advisors" who hold themselves out as knowledgeable about financial matters, and who encourage individuals to rely on their purported expertise create a relationship warranting imposition of a fiduciary duty.

Although the question of whether a fiduciary duty exists is a question of fact that generally should not be decided on a motion to dismiss, Connecticut courts have dismissed such claims in cases where the parties were equals dealing at arm's length, or otherwise not in a relationship of trust and confidence. *See Hi-Ho Tower*, 255 Conn. at 40 (holding that the defendants did not owe a fiduciary duty as a matter of law since the parties were equals in an arm's length transaction, in which the defendants were only to provide technical assistance and limited management services to the plaintiff and therefore plaintiff was not placing a unique degree of trust in the defendants and was able to protect its own business interests); *see also R. S. Silver Enterprises Co., Inc. v. Parcarella*, No.FSTCV065002499S, 2010 WL 3259869, at *28-29 (Conn. Super. 2010) (holding no fiduciary duties were created as the parties dealt with each other at arm's

length since the parties "were each experienced professionals, thoroughly familiar with commercial real estate transactions in the Greenwich market"). Unlike these cases, Attorney Rosenberg had superior knowledge, skill and expertise with respect to the specific kind of investment opportunity that he allegedly presented to Plaintiff, leaving Plaintiff reliant on his expertise. *See* [Dkt. #1, Compl. General Allegations ¶¶ 13–14]. In addition, the factual allegations support a plausible inference that the parties were not dealing at arms-length or that the Plaintiff could not protect his own business interest as a result of Attorney Rosenberg's representation that he had prior experience with and touted his superior knowledge of the transaction, thereby inducing the Plaintiff to trust and rely upon his expertise. Under the facts as alleged, Plaintiff has stated a plausible claim that the Rosenberg Defendants had a fiduciary duty to Plaintiff. Accordingly, the Rosenberg Defendants' motion to dismiss Count II is denied.

The Court's denial of the Rosenberg Defendants' motion to dismiss is based on its finding that the factual allegations in Plaintiff's complaint support a reasonable inference that Attorney Rosenberg also acted as a financial advisor in holding himself out as someone with superior knowledge and expertise in the particular transaction thereby plausibly creating a fiduciary relationship.

### Analysis of Conversion Claim

The Rosenberg Defendants have moved to dismiss Plaintiff's conversion claim on the basis that Plaintiff has not plausibly stated that Attorney Rosenberg exercised dominion and control over his investment as required to state a claim for conversion under Connecticut law since Plaintiff has alleged that the

Rosenberg Defendants released Plaintiff's funds out of the escrow account and have not alleged that the Rosenberg Defendants have converted the funds for their own use. The Rosenberg Defendants argue that a claim for conversion cannot be maintained where the allegations do not establish that the defendant actually took possession or control over the converted property for his own use. *See* [Dkt. #23-1, Mem. of Law in Supp. Of Def.'s Mot. To Dismiss 7–8]; [Dkt. # 35, Pl.'s Response to Def.'s Mot. To Dismiss 6–7]. The Rosenberg Defendants reason that since Plaintiff has alleged that Attorney Rosenberg released the funds out of the escrow account, these allegations do not support a plausible inference that the Rosenberg Defendants actually took possession or control over the funds.

The Plaintiff argues that the Defendants "wrongfully assumed and exercised the right of ownership over the property belonging to Plaintiff, without authorization and to the exclusion of Plaintiff's rights." [Dkt. #1. Compl. Count IV ¶ 43]. Plaintiff's allegations support an inference that the Rosenberg Defendants exercised dominion and control over his funds when Attorney Rosenberg allegedly released the funds out of the escrow account contrary to the terms of the Escrow Agreement and contrary to Plaintiff's instruction regardless of whether the Rosenberg Defendants converted the funds for their own use or released the funds to another party or parties who then used the funds for their own purpose.

Under Connecticut law, "conversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." *Deming v. Nationwide Mut. Ins.*

*Co.*, 279 Conn. 745, 770 (2006). Conversion is an unauthorized act through which a person wrongfully exercises powers over the owner's property in a manner inconsistent with the owner's right to dominion over his property. *Id.* Connecticut courts have recognized that conversion can occur in two general classes: first in which possession of the allegedly converted goods is wrongful from the onset; and second in which the conversion arises subsequent to an initial rightful possession. *Luciani v. Stop & Shop Companies, Inc.*, 15 Conn. App. 407, 410 (1988). Where possession was initially rightful, conversion could occur when the defendant wrongfully detained the property, wrongfully used the property, or wrongfully exercised dominion over the property. *Id.*

Plaintiff's allegations support an inference that Attorney Rosenberg exercised dominion and control over his funds by releasing Plaintiff's funds from the escrow account without authorization. To the extent that Attorney Rosenberg can be said to be in possession of the funds in the escrow account as escrow agent, such possession would have been initially rightful. However, once he released the funds without authorization, Plaintiff has alleged that he committed conversion by wrongfully using and exercising domain over the funds. Plaintiff has alleged that Attorney Rosenberg never presented evidence that the CD had been issued, which was a condition precedent to the release of funds under the terms of the Escrow Agreement, and that contrary to Plaintiff's instructions Attorney Rosenberg released the funds out of the escrow account. These allegations support a plausible inference that the Rosenberg Defendants

exercised dominion and control without authorization over Plaintiff's property to state a claim for conversion.

Under Connecticut law, it does not appear that a plaintiff need allege that a defendant converted the funds for their own use to maintain a cause of action for conversion. As noted earlier, the Connecticut Supreme Court has not defined conversion as explicitly requiring that the Defendant must maintain possession of the converted property in order to exercise control over it. The Court sees no reason why the Rosenberg Defendant's allegedly unauthorized action of releasing the funds out of the escrow account would not constitute control over property for purposes of a conversion claim.

Furthermore, Connecticut courts have held that a conversion claim can be maintained where the defendant did not maintain possession over the converted property but where the defendant exercised dominion over the property in a manner that deprived the plaintiff of his ownership rights. See *Luciani v. Stop & Shop Companies, Inc.*, 15 Conn. App. 407 (1988) (holding that defendant converted plaintiff's property by removing and destroying fixtures and equipment from a leased property where such fixtures were plaintiff's property even though possession was initially rightful); *Epstein v. Automatic Enterprises*, 6 Conn. App. 484, 486-89 (1986) (holding there was ample evidence to support jury verdict that defendant was liable for conversion when Defendant defaulted on his lease payments for a vending machine and then transferred the machine to his daughter); *First National Bank of Park Ridge v. Broder*, 107 Conn. 574 (1928) (noting that conversion could have occurred if defendant attorney failed to return

to plaintiff a certain note to which plaintiff claimed title and instead delivered the note to another who did not have a right of possession in the note). Here, Plaintiff has alleged that the Rosenberg Defendants converted the Plaintiff's funds when he wrongfully released the funds to someone who had no right of possession. The act of releasing the funds contrary to the Escrow Agreement constituted the wrongful assumption and exercise of the right of ownership over the property belonging to Plaintiff, without authorization and to the exclusion of Plaintiff's rights. Therefore, it does not matter who actually maintains current possession of the funds, since the act of releasing the funds completed the conversion by the Rosenberg Defendants. Accordingly, the Plaintiff has alleged sufficient facts to support a legally valid claim for conversion. The motion to dismiss Plaintiff's Count IV is denied.

### Conclusion

Based upon the above reasoning, the Rosenberg Defendants' [Dkt. #23] motion to dismiss is DENIED.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: January 11, 2012